IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

|  |  |  |
|---|---|---|
| **TRUSTEES OF THE PLUMBERS AND STEAMFITTERS UNION LOCAL NO. 10 APPRENTICESHIP FUND,** | ) ) ) ) ) ) |  |
| **Plaintiff,** | ) ) |  |
| v. | ) ) ) | Civil Action No.: 3:24-cv-00180 |
| **VICTORIA NAPKY,** | ) ) |  |
| **Defendant.** | ) ) ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Defendant, Victoria Napky ("Defendant" or "Ms. Napky"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), and Local Rule 7(F) of the Rules of the Eastern District of Virginia, in support of her Motion to Dismiss Plaintiff Trustees of the Plumbers and Steamfitters Local No. 10 Apprenticeship Fund's ("Plaintiff" or the "Fund") Complaint, states as follows:

**I.      <u>INTRODUCTION</u>**

This action is brought by a welfare benefit fund's Trustees (as fiduciaries) against a former employee of the Fund. While the Fund is, of course, regulated by ERISA related to many of its actions – this is not one of those cases. Instead, the Fund seeks to invoke this Court's jurisdiction by asserting that an alleged overpayment of wages is subject to ERISA. It is not.

More specifically, in bringing this action, the Fund asks the Court to apply ERISA's civil enforcement provisions to its business dealings with employees. That relationship – between a fund or plan and its employees (or other third-party debtors/creditors) – has long been held to be outside of the purview of ERISA. Indeed, the plain language of 29 U.S.C. § 1132(a)(3)(B) (the ERISA provision on which Plaintiff relies), only permits redress for violations of ERISA and/or to enforce the terms of the applicable ERISA plan. Here, Plaintiff does not allege any violation or plan provision – because it cannot. This is a dispute over wages – nothing more. As such, as courts have consistently held, because the Fund is operating as a commercial entity (paying wages to an employee), state law governs, not the remedial scheme under ERISA.

What's more, putting the parties' relationship aside, courts, including the Fourth Circuit, have consistently held that the payment of wages alone is not in the purview of ERISA, as the distinction of benefit compensation (subject to ERISA) and wages must be carefully considered to avoid invalidating state law. In short, Plaintiff has failed to allege any violation of ERISA or the plan documents; nor does it seek to enforce ERISA or any plan. For that reason alone, Plaintiff's ERISA claim fails.

Moreover, even if Plaintiff could assert a violation of ERISA or terms of a plan, Plaintiff's claim still fails because 29 U.S.C. § 1132(a)(3)(B) only authorizes traditional equitable relief – not the monetary relief Plaintiff seeks. First, the basis of Plaintiff's claim is not equitable because "restitution in equity typically involved enforcement of 'a constructive trust or an equitable lien,'" neither of which exist here.[1] Court decisions finding an equitable claim under §1132(a) deal with constructive trusts or equitable liens created by agreement – through contract or the applicable plan. As stated, Plaintiff has not alleged (and it cannot) that an ERISA plan provision is at issue to

---

[1] Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan, 577 U.S. 136, 142 (2016).

2

create such equitable entitlement. Second, the nature of the remedy Plaintiff seeks is not equitable. The Fourth Circuit, supported by a long line of Supreme Court jurisprudence, confirms that a plaintiff cannot seek equitable relief by asserting money damages against a defendant's general assets. As such, as Plaintiff admits that it paid wages into Defendant's bank account as part of her general assets, Plaintiff has no right to an equitable remedy as a matter of law.

Last, to the extent Plaintiff asserts any other claims (Plaintiff only sets forth a single Count for "Equitable Relief Under ERISA"), those claims must also be dismissed. First, for similar reasons discussed above, Plaintiff cannot bring a federal common law unjust enrichment claim without invoking ERISA. Second, as Plaintiff's federal claims are subject to dismissal, this Court should dismiss any remaining state law claim for lack of jurisdiction. For all of those reasons, as more fully discussed below, Plaintiff's entire Complaint should be dismissed.

## II.   STATEMENT OF ALLEGED FACTS[2]

The Fund alleges that it employed Ms. Napky starting June 22, 2022, to assist the Fund's Training Director with office work. Compl. ¶¶ 2, 13. The Fund paid Ms. Napky $48.00 per hour, the overtime rate of a journeyperson of the Plumbers and Steamfitters Union Local 10 ("Local 10"), directly from the Fund into Ms. Napky's bank account. Id. "As with the Fund's training instructors, Ms. Napky was not provided with the pension, medical, and other fringe benefit contributions provided for to [sic] employees working under the Local 10 Collective Bargaining Agreement." Id. at ¶ 2.

On or around August 5, 2022, Ms. Napky accepted an offer to work as a permanent employee with Local 10. Id. ¶¶ 3, 14. From August 5, 2022 until on or around February 29, 2023,

---

[2] For purposes of this Motion only, Defendant states Plaintiff's alleged facts as true. By doing so, Defendant does not admit to any of the alleged facts asserted by Plaintiff.

the Fund alleges that it continued depositing weekly payments into Ms. Napky's bank account "due to an administrative error." Id. ¶¶ 1, 3-4, 15. Then, on or around February 29, 2023, Plaintiff alleges that it discovered the "error" and ceased the weekly payments. Id. ¶¶ 4, 18. Plaintiff alleges the total amount of payments due to this alleged administrator error was $58,590.00. Id. ¶ 1.

On March 3, 2023, Trustees met with Ms. Napky to discuss the alleged erroneous payments. Id. ¶ 19. Plaintiff alleges that Ms. Napky told the Trustees that she was unaware of the payments, but offered to pay the money back. Id. Nevertheless, Local 10 terminated Ms. Napky's employment at the conclusion of the meeting. Id. Plaintiff then claims that ultimately Ms. Napky "pointedly refused to [pay the alleged amounts] when pressed with the threat of legal action." Id. ¶ 20. On March 11, 2024, Plaintiff filed its Complaint, asserting that "Defendant was unjustly enriched" and seeking monetary relief in an amount of $58,590.00. Id. ¶¶ 1, 22.

Based on these alleged facts, Plaintiff first asserts "causes of action that arise under [the Employee Retirement Income Security Act of 1974 (ERISA)], and federal and state common law of unjust enrichment" (Compl. ¶ 7), but sets forth only a single count for "equitable relief under ERISA," citing 29 U.S.C. § 1132(a)(3)(B). Compl. ¶ 22.

### III. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face" as required by Fed. R. Civ. P. 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. "It requires the plaintiff to articulate facts that, when accepted as true, show that the plaintiff has stated a claim entitling him to relief." Silverman v. Town of

4

Blackstone, 843 F. Supp. 2d 628, 631 (E.D. Va. 2012) (quoting Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009)) (internal quotation marks omitted).

The Supreme Court explained further, in Iqbal, that the standard of facial plausibility requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action[,]" or "naked assertions devoid of further factual enhancement" will not suffice. Id. (quoting Twombly, 550 U.S. at 555, 557) (internal quotation marks omitted).

Determining whether a claim is plausible on its face is a context-specific task that requires the reviewing court to *draw on its judicial experience and common sense*. Iqbal, 556 U.S. at 679 (emphasis added). Although the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. Silverman, 843 F. Supp. 2d at 631. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. As explained below, Plaintiff's factual allegations do not entitle it to relief as a matter of law.

IV. **ARGUMENT**

    A. **Plaintiff Has Not – and Cannot – Assert a Claim Under 29 U.S.C. §1132(a)(3)(B)**

Plaintiff presumably brings this action under ERISA because it is a Fund and, in many instances, is governed by ERISA. However, this is not one of those instances. Instead, Plaintiff merely requests relief related to the overpayment of wages to an employee of the Fund, which is not governed by ERISA as a matter of law. Further, even if it were (or if the Court disagrees), Plaintiff admits that it seeks *monetary relief* stemming from payments made to Ms. Napky's bank

5

account (*i.e.*, her general assets) – not "equitable relief" as set forth in 29 U.S.C. § 1132(a)(3)(B) and established precedent. As such, as explained further below, Plaintiff's claim is not subject to ERISA and this Court lacks jurisdiction over this action.

>   i.  **Defendant's Acceptance of Alleged Overpayment of Wages is not an ERISA Violation and Plaintiff Does not Seek to Enforce the Provisions of the Terms of a Plan against Defendant.**

The plain language of 29 U.S.C. § 1132(a)(3)(B) establishes the parameters of Plaintiff's alleged cause of action: "a civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." The analysis can end there because Plaintiff does not identity any violation of ERISA by Defendant, nor does Plaintiff seek to enforce the terms of ERISA or any plan. Instead, it merely seeks to recoup the wages paid to a Fund employee – outside of the terms of plan.

"ERISA is 'a comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993) (quoting Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 361 (1980)). As such, courts must be "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." Id. (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)). The Fourth Circuit has long understood the same, holding that ERISA "was not designed to address every conceivable aspect of an employee's monetary rights," specifically stating – as applicable here – that "it is not primarily concerned with hourly wages and overtime pay, the domain of the FLSA and its state

6

counterparts." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 261 (4th Cir. 2006) (citing Massachusetts v. Morash, 490 U.S. 107, 115 (1989)).

Put more simply, the relationship at issue here – the Fund and its employee – is not regulated by ERISA. ERISA "regulates certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee. Gen. Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993) (citing J. Daniel Plants, Note, Employer Recapture of ERISA Contributions Made by Mistake, 89 Mich. L. Rev. 2000, 2017 (1991)). Those relationships are not at issue here. Instead, Plaintiff seeks to have the Court hold that ERISA regulates the relationship between a fund and its employees. That is not so:

> But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity - for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space. State law is allowed to govern these relationships, because it's much less likely to disrupt the ERISA scheme. Moreover, if these relationships were governed by federal law, federal courts would have to invent a federal common law of contracts, torts, property, corporations, something that would run against the grain of our federal system. Cf., e.g., Federal Tort Claims Act, 28 U.S.C. § 2674 (incorporating state law for torts committed by the federal government, rather than creating a federal law of torts).

Castonguay, 984 F.2d at 1522.

Based on this basic understanding, courts, relying on Supreme Court precedent, have consistently dismissed claims (or rejected arguments of preemption by ERISA) when the relationship stems from the plan's business operations (*e.g.*, a relationship between the fund and an employee). See, e.g., Hermann Hosp. v. Pan Am. Life Ins. Co., 932 F. Supp. 899, 901 (S.D. Tex. 1996) (ERISA "would not preempt a landlord's claim for rent owed by the benefit plan for

its office operation; nor would the law preempt a plan employee's wage") (citing Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 832-33 (1988) (holding that routine failures to pay business creditors are not preempted); see also Carolina Care Plan, Inc. v. Auddie Brown Auto Sales of Florence, Inc., Civil Action No. 4:06-00792-RBH, 2007 U.S. Dist. LEXIS 24962, at *14 (D.S.C. Mar. 31, 2007) ("courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities-the employer, the plan, the plan fiduciaries, and the beneficiaries- than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan") (quoting Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 249 (5th Cir. 1990)); Strategic Outsourcing, Inc. v. Commerce Benefits Grp. Agency, 54 F. Supp. 2d 566, 573 (W.D.N.C. 1999) ("ERISA does not preempt regulation of those relationships 'where a plan operates just like any other commercial entity-for instance the relationship between the plan and its own employees, or the plan and its insurers or creditors.'" (quoting Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1360 (9th Cir. 1997)).

In addition, putting the relationship of the parties aside, courts, including the Fourth Circuit, have also consistently held that the payment of wages is not governed by ERISA.[3] Perdue Farms, 448 F.3d at 261 ("'the distinction between 'wage' compensation (not regulated by ERISA) and 'benefit' compensation (regulated by ERISA) must be sensitively drawn to avoid invalidating state regulatory schemes Congress intended to encourage.'") (quoting Cal. Hosp. Ass'n v. Henning, 770 F.2d 856, 861 (9th Cir. 1985)); WSB Elec. v. Curry, 88 F.3d 788, 791 (9th Cir. 1996) ("It is well settled that wages are a subject of traditional state concern, and are not included in ERISA's

---

[3] Indeed, if ERISA covers the recoupment of the overpayment of wages to a Fund employee, then ERISA must likewise cover a Fund employee seeking owed wages from the Fund. That is not the case, as such claim is the province of state law or the Fair Labor Standards Act.

definition of 'employee benefit plan.' Thus, regulation of wages per se is not within ERISA's coverage.") (citing Morash, 490 U.S. at 118 (holding that ERISA does not preempt a state law regulating vacation pay)); see also 29 C.F.R. § 2510.3-1 ("the terms 'employee welfare benefit plan' and 'welfare plan' shall not include— (1) Payment by an employer of compensation on account of work performed by an employee . . .).

Indeed, Plaintiff pleads its way out of any ERISA claim by admitting that "[a]s with the Fund's training instructors, Ms. Napky was not provided with the pension, medical, and other fringe benefit contributions provided for to [sic] employees working under the Local 10 Collective Bargaining Agreement." Compl. ¶ 2. In short, in requesting a return of the payments at issue here – alleged overpayment of wages – Plaintiff has not alleged that Ms. Napky violated either ERISA or any applicable plan. See, e.g., Hesse v. Case New Holland Indus., Inc., No. 20-CV-1267-JPS, 2021 U.S. Dist. LEXIS 142316, at *5 (E.D. Wis. July 30, 2021) ("Defendant has not pleaded that Plaintiff, in seeking to recoup and recouping the overpayments, violated either ERISA or the Plan. The Court directs the parties to a Seventh Circuit decision, Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc., 657 F.3d 496 (7th Cir. 2011), that makes clear that Plaintiff's failure to allege that Defendant violated ERISA or the Plan forecloses Plaintiff from bringing his claims in federal court").

Kolbe & Kolbe Health & Welfare Benefit Plan is instructive. There, the Seventh Circuit, relying on Supreme Court precedent, made clear that an ERISA Section 502(a)(3) claim (which is 29 U.S.C. § 1132(a)(3)) "allows a plan fiduciary, such as plaintiffs . . ., to bring claims in equity to enforce provisions of the plan, but not claims at law."[4] 657 F.3d at 502. While the plaintiffs

---

[4] As explained below, Plaintiff's claims are at law, not equity, and subject to dismissal for that separate reason.

9

claimed to seek enforcement of plan terms through the overpayment of benefits, the Seventh Circuit held that plaintiffs admitted they had no ERISA claim. Id. at 502-03. As the court aptly put, "plaintiffs are seeking equitable relief to enforce a term of its Plan that by its own allegations was never violated and cannot be enforced . . .." Id. at 503. The same goes here. Plaintiff does not seek to enforce any term of an ERISA plan or a violation of ERISA (it cites to neither). Instead, "ERISA has nothing to do with this case." Id. For that reason alone, Plaintiff's ERISA claim must be dismissed.

    ii.  **Even if Plaintiff's Claim was Actionable, Plaintiff Seeks Monetary Relief from Defendant's General Assets, which is Not Permitted Under 29 U.S.C. § 1132(a)(3)(B).**

Plaintiff's ERISA claim fails for a sperate, equally dispositive, reason. Even if Plaintiff can assert that Ms. Napky's status as a Fund (and then Union) employee invokes ERISA regulations and/or the terms of the plan, Plaintiff can only seek equitable relief through its § 502(a)(3) claim, which it fails to do.

The Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3) as referring to 'those categories of relief' that, traditionally speaking (i.e., prior to the merger of law and equity) 'were typically available in equity.'" CIGNA Corp. v. Amara, 563 U.S. 421, 439 (2011) (citing Sereboff v. Mid Atlantic Medical Services, Inc., 547 U. S. 356, 361 (2006) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)). And, "whether the remedy a plaintiff seeks 'is legal or equitable depends on [(1)] the basis for [the plaintiff's] claim and [(2)] the nature of the underlying remedies sought.'" Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan, 577 U.S. 136, 142 (2016) (citing Sereboff, 547 U. S. at 363) (internal quotation marks omitted). Plaintiff's claim fails on both accounts.

First, while Plaintiff claims to seek alleged restitution,[5] which can be a form of equitable relief, "not all relief falling under the rubric of restitution is available in equity." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002). As the Supreme Court has explained, "restitution in equity typically involved enforcement of 'a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" Montanile, 577 U.S. at 143 (quoting Knudson, 534 U.S. at 213). Here, Plaintiff's label of "restitution" does not suffice. The Supreme Court decisions holding that an equitable claim has been established all deal with constructive trusts or equitable liens created by agreement. See Montanile, 577 U.S. at 142-143 (discussing cases). No constructive trust or equitable lien is alleged to have been created by the parties. That is because, as discussed above, Plaintiff has not alleged (and it cannot) that an ERISA plan provision is at issue to create such equitable entitlement. Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc., 756 F.3d 356, 365 (5th Cir. 2014) ("ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets."). Moreover, Plaintiff does not seek restitution "against an identifiable fund or asset," which destroys its argument that the relief sought is equitable. Akers v. Md. State Educ. Ass'n, 990 F.3d 375, 381 (4th Cir. 2021).

Second, even if Plaintiff's claim were equitable (it is not), the nature of the remedy sought is not equitable. The Supreme Court has made "clear that a plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession

---

[5] To be clear, Defendant denies she owes Plaintiff anything, as Plaintiff agreed to pay Defendant the wages at issue.

11

or against traceable items that the defendant purchased with the funds (e.g., identifiable property like a car)." Montanile, 577 U.S. at 144-45. Relying on this long line of Supreme Court jurisprudence, as to restitution specifically, the Fourth Circuit holds:

> to qualify as "equitable," restitutionary relief imposed to remedy unjust enrichment must be proprietary, not personal: The plaintiff cannot recover out of the defendant's general assets. Instead, the plaintiff must (1) identify certain property or money "belonging in good conscience" to him, and (2) that property must "clearly be traced to particular funds or property in the defendant's possession."

Rose v. PSA Airlines, Inc., 80 F.4th 488, 501 (4th Cir. 2023) (citing Knudson, 534 U.S. at 213); see also Montanile, 577 U.S. at 145) ("[e]quitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets.'") (quoting 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941)); Akers, 990 F.3d at 381 (same).

Here, Plaintiff simply alleges that it overpaid Defendant certain wages into her bank account – part of her general assets. Compl. ¶¶ 13, 15. As such, Defendant does not (and cannot) identify a specific property in possession of Defendant to which it is entitled. Montanile, 577 U.S. at 145; Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC, Civil Action No. DKC 14-2376, 2015 U.S. Dist. LEXIS 91689, at *25-26 (D. Md. July 15, 2015) ("the only allegation supporting that the Cigna entities can specifically identify and trace plan funds is that the 'overpayments [at issue] are within the possession and control of the Defendants.' [citation omitted]. The Cigna entities have not alleged that the overpayments were kept in separate accounts or otherwise how they are separate and distinct from the ASCs' general assets.") (citing Cent. States, Se. & Sw. Areas Health & Welfare Fund, 756 F.3d at 366); Trs. of the Nat'l Asbestos Workers Med. Fund v. Wilson, No. 2:12-cv-06449, 2014 U.S. Dist. LEXIS 41678, at *5-6 (S.D.

W. Va. Mar. 28, 2014) ("Here, the plaintiff alleges that the defendants fraudulently obtained funds that were paid out in the form of medical benefits. . . . The plaintiff does not claim to know the status of those funds, or whether those funds have been spent. Therefore, the plaintiff's claim is not one for restitution in equity, but for general damages."); ACS Recovery Servs., Inc. v. Griffin, 723 F.3d 518, 527-28 (5th Cir. 2013) ("Under . . . Sereboff . . . the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient.").

Accordingly, Plaintiff's claim is one for general damages, not equitable restitution, and Plaintiff's claim fails for that separate reason.

> **B.    To the Extent Plaintiff Pleads Federal and State Common Law Claims for Unjust Enrichment, They Must Also be Dismissed**

Although Plaintiff's introduction to its Complaint references claims for "federal and state common law of unjust enrichment," the remainder of Plaintiff's Complaint does not assert such claims. Compl. at p. 1. Instead, Plaintiff's Complaint sets forth a single Count for a "Civil Action for Equitable Relief Under ERISA." Compl. ¶¶ 21-22. Accordingly, Plaintiff has not sufficiently pled any other claim; and, for that reason alone, Plaintiff's entire Complaint must be dismissed.

Nonetheless, even if Plaintiff's deficient pleading of other claims is permissible, as explained below, Plaintiff's claims should still be dismissed for lack of jurisdiction and/or failure to state a claim.

> **i.    Because Plaintiff's Claim is Not Subject to ERISA, Plaintiff's Federal Common Law Claim for Unjust Enrichment Fails.**

Plaintiff's alleged federal common law claim for unjust enrichment fails because its ERISA claim fails. While "[i]t is true that, in interpreting the provisions of ERISA, federal courts are charged with the responsibility of fashioning a federal common law 'to deal with issues involving

13

rights and obligations under private welfare and pension plans,'" here, "because the rights and obligations under the Plan are not at issue," any common law claim under ERISA likewise fails. Kolbe & Kolbe Health & Welfare Benefit Plan, 657 F.3d 496, 504 (7th Cir. 2011) (citing Buckley Dement, Inc. v. Travelers Plan Adm'rs. of Ill., Inc., 39 F.3d 784, 789 (7th Cir. 1994) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 24 n. 26 (1983)).

In short, just as with its underlying ERISA claim, Plaintiff has failed to point to any connection with plan provisions or the application of ERISA, which would permit the rare "exception" for this Court to create a common law claim. Elmore v. Cone Mills Corp., 187 F.3d 442, 449 (4th Cir. 1999) ("There is no express right in ERISA for unjust enrichment and the plaintiffs here have not established 'a particularly strong affirmative indication that such a common law right would effectuate a statutory policy' of ERISA on the facts of the case. [internal citations omitted] . . . Accordingly we affirm the district court's ruling that the plaintiffs' attempt to obtain funds outside of the plan documents on a federal common law theory of unjust enrichment must fail."); Total Renal Care of N.C., L.L.C. v. Fresh Mkt., Inc., No. 1:05CV00819, 2008 U.S. Dist. LEXIS 18889, at *38-39 (M.D.N.C. Mar. 6, 2008) ("permitting an unjust enrichment claim to go forward in the instant matter would not effectuate an express term of the Plans or further the policies of ERISA").

Accordingly, because ERISA is not implicated, even if properly pled, Plaintiff cannot pursue a federal common law unjust enrichment claim; and, therefore, this claim must be dismissed as a matter of law.

### ii. Any State Law Claim Should be Dismissed for Lack of Jurisdiction

Given that Plaintiff's claims under federal law must be dismissed (as described above), Defendant further requests that the Court dismiss any remaining state law claims (*i.e.*, unjust

14

enrichment) for lack of jurisdiction. It is well-settled that a district court "may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction." Fields v. Sprint Corp., Civil Action No. 3:15cv618, 2016 U.S. Dist. LEXIS 122504, at *8-9 (E.D. Va. Sep. 9, 2016) (citing 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well)).

Given the dismissal of Plaintiff's ERISA claims, the Court does not have original jurisdiction over any state law claim for unjust enrichment. As articulated by the Fourth Circuit, a District Court should consider "'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy,'" when evaluating whether to retain jurisdiction over state law claims. Id. at *9 (citing Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995)). All such factors here weigh in favor of dismissal.

First, as to fairness and convenience, this case is in the earliest stage of litigation (the pleadings stage), and if Plaintiff "subsequently file [its] claims in a court of appropriate jurisdiction, the parties would, for all intents and purposes, begin at the same stage of the litigation process." Id. at *13. Second, no issues of federal policy underly a simple Virigina state law unjust enrichment claim. Id. at *12 (dismissing case where "all remaining counts allege causes of action under Virginia law"). Third, given that Virginia law governs any state law unjust enrichment claim, "[i]t would be imprudent for this Court, one of limited jurisdiction, to suggest that it could more readily decide matters of Virginia law than Virginia courts could." Id. at *13.

Accordingly, based on those well-settled factors, Defendant respectfully requests that the Court decline to exercise jurisdiction over any state law unjust enrichment claim asserted by Plaintiff.

## V. CONCLUSION

Based on the foregoing, Defendant respectfully requests that Plaintiff's Complaint be dismissed for failure to state a claim and that any remaining state law claims be dismissed for lack of supplemental jurisdiction.

Respectfully Submitted,

*/s/ Mark J. Passero*
Mark J. Passero (VSB No. 90463)
D. Scott Laws (VSB No. 99436)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*mpassero@lawrencequeen.com*
*slaws@lawrencequeen.com*

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of April 2024, the foregoing document was served via the Court's ECF system upon all counsel of record, including the following:

Jacob N. Szewczyk, Esq. (VSB No. 89617)
Charles W. Gilligan, Esq. (admitted pro hac vice)
Sumbul I. Alam, Esq. (pro hac vice forthcoming)
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC 20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
*jszewczyk@odonoghuelaw.com*
*cgilligan@odonoghuelaw.com*
*salam@odonoghuelaw.com*

*Counsel for Plaintiff*

/s/ Mark J. Passero
Mark J. Passero (VSB No. 90463)
D. Scott Laws (VSB No. 99436)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*mpassero@lawrencequeen.com*
*slaws@lawrencequeen.com*

*Counsel for Defendant*