IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS AND STEAM-<br>FITTERS UNION LOCAL NO. 10 APPRENTICESHIP<br>FUND<br>5312 Distributor Drive<br>Richmond, VA  23225<br><br>        Plaintiff,<br><br>        v.<br><br>VICTORIA NAPKY,<br>23 N. Cedar Avenue<br>Richmond, VA 23076<br><br>Serve:<br>        Victoria Napky<br>         23 N. Cedar Avenue<br>         Richmond, VA 23076<br><br>        Defendant. | Civil Action No. 3:24-cv-180-HEH |

## FIRST AMENDED COMPLAINT

Plaintiff, Trustees of the Plumbers and Steamfitters Union Local No. 10 Apprenticeship Fund ("Plaintiff"), by and through its undersigned counsel, O'Donoghue & O'Donoghue LLP, hereby bring suit against Defendant Victoria Napky ("Defendant" or "Ms. Napky") for restitution under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and both federal and state common law claims of unjust enrichment, as set forth below.

## PARTIES

1.  Plaintiff is the "named fiduciary" within the meaning of Section 402(a) of ERISA, 29 U.S.C. § 1102(a), of the Plumbers and Steamfitters Union Local 10 Apprenticeship Fund

(hereinafter, "Fund"), an ERISA welfare benefit fund as defined by Section 3(1) of ERISA, 29 U.S.C. §1002(1). The Fund is established and maintained pursuant to its Restated Agreement and Declaration of Trust (hereinafter, "Trust Agreement") and is governed by a six-person Board of Trustees made up of an equal number of representatives of labor and management pursuant to Section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §186(c)(5). As ERISA fiduciaries, the Trustees are entrusted with financial oversight of the Fund, administering the Fund in accordance with its governing plan documents, and making decisions binding on the Fund, among other functions. The Apprenticeship Fund provides instruction at its facility at 5312 Distributor Drive in Richmond, Virginia, while its financial administration is handled in the offices of Southern Benefit Administrators, Inc., 2001 Caldwell Drive, Goodlettsville, Tennessee 37072-3589.

2. Defendant Victoria Napky is an individual who maintains a primary residence at 23 N. Cedar Avenue, Richmond, Virginia 23075.

## JURISDICTION

3. The Court has jurisdiction over this action under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), as this action arises seeks equitable relief under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

4. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the claims herein arise under federal law, and the Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367 as such state law claims are so related to the claims over

which this Court has jurisdiction and share the same nucleus of facts such that they form part of the same case or controversy under Article III of the Constitution.

5. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 as this is the jurisdiction in which the Fund is administered as well as the jurisdiction in which Defendant resides and where a substantial part of the omissions giving rise to this action occurred. Venue is also proper pursuant to 28 U.S.C. § 1391 because Ms. Napky lives in the judicial district as the Court and because a substantial part of the omissions giving rise to this action occurred in the Court's jurisdiction.

## BACKGROUND FACTS

6. The Fund provides a five-year apprentice training program to teach the skills necessary for individuals to become journeypersons in plumbing, pipefitting, welding, HVAC ("heating, ventilation, and air conditioning") service technicians, and other branches of what are known as the mechanical trades. The day-to-day operations of the Fund are overseen by not only the Trustees but also a Training Director and a Joint Apprenticeship Training Committee (or "JATC"), which is made up of an equal number of representatives of labor and management. The JATC helps develop the training curricula used in the program, which, in turn, is overseen by the Training Director, and taught in the evening by instructors who also work in the trade under Local 10's Collective Bargaining Agreement ("Local 10 CBA" or "Agreement"). In addition to attending the classes taught at the Apprenticeship School, apprentices work at the trade as an integral part of their learning experience, receiving wages and benefits required under the Local 10 CBA.

7. Defendant was employed by the Fund from June 22, 2022 thru August 5, 2022, at which time Ms. Napky was being paid for forty hours per week in the same manner as the Fund pays its training instructors, with an hourly wage of $48.00, a figure based on the overtime rate for journeyperson steamfitters performing work covered by the Local 10 CBA. As with the Fund's training instructors, Ms. Napky's wage package did not include the pension, medical, and other fringe benefit contributions paid on behalf of employees working under the Local 10 CBA. The wage payments were directly deposited into Ms. Napky's bank account.

8. On August 5, 2022, Local 10 hired Ms. Napky to work full time for the Local as a permanent employee, thereby terminating her employment with the Fund. Her terms and conditions of employment provided that she would receive pay at the hourly rate of $32.00 for 40 hours of work per week, which was the straight time journeyperson rate for steamfitters under the Local 10 CBA at the time. Additionally, Local 10 would make contributions on behalf of Ms. Napky to provide her with a defined benefit pension plan, a defined contribution pension plan, and fully paid family medical coverage. These contributions were paid respectively to the UA National Pension Fund in the hourly amount of $5.31, to the Plumbers and Steamfitters Union Local No. 10 Individual Account ("Annuity") Fund in the hourly amount of $4.26, and the Plumbers and Steamfitters Union Local No. 10 Health and Welfare Fund in the hourly amount of $7.78, for total fringe benefit contributions made on Ms. Napky's behalf of $17.35 per hour or $694.00 per week.

**COMMON FACTS**

9.      Ms. Napky was a journeyperson member of Local 10, having progressed through its apprenticeship training program to achieve that status. In that capacity, she worked for various employers in the mechanical trades who were signatory to the Local 10 CBA and received the wages and benefits provided for under the Agreement.

10.     On or around May of 2022, Ms. Napky was laid off from her employment due to a lack of work as a job on which she was working was winding down.

11.     On or around June 2022, Local 10 held its Union elections and a brand-new slate of officers, including a new Business Manager – the chief executive officer of Local 10 – and two new Business Agents, assumed office. The new Business Manager, Nate Davenport, and the two new Business Agents, Neale Kelly and William Dunn, also became Trustees of the Fund at that time.

12.     On or around June 22, 2022, the Fund hired Ms. Napky to assist the Fund's Training Director in the office. As a contractual employee, Ms. Napky was paid an hourly wage equal to the overtime rate for a journeyperson of Local 10 as provided for under the Local 10 CBA with no fringe benefits. She was paid weekly and had same directly deposited into her bank account.

13.     On or around August 5, 2022, Ms. Napky accepted a full-time position offered to her by Mr. Davenport to work as an employee of Local 10. As a full-time employee of Local 10, Ms. Napky received the regular rate of pay for a journeyman as provided for under the Local 10 CBA and pension, medical, and other fringe benefit contributions.

14.     Due to an internal communication error, Ms. Napky's weekly payments from the Fund continued to be directly deposited into her account after she terminated her employment on August 5, 2022, at which point she had received all wages from the Fund to which she was entitled.

15. From August 5, 2022 through February 29, 2023, Ms. Napky received not only her full-time salary from Local 10 but also, unbeknownst to Plaintiff, unwarranted and erroneous payments from the Fund on a weekly basis.

16. Ms. Napky never notified Plaintiff that she was still receiving payments from the Fund after she terminated her employment with the Fund to accept full-time employment with Local 10.

17. On or about February 29, 2023, Plaintiff discovered that Ms. Napky was receiving these unwarranted and erroneous payments from the Fund.

18. On March 3, 2023, Plaintiff's Union Trustees met with Ms. Napky and inquired as to her knowledge of these continued unwarranted and erroneous payments. At this meeting, Ms. Napky professed ignorance regarding receipt of these excess payments but offered to pay the money back to the Fund. Concerned with the failure of Ms. Napky to bring this matter to his attention, the Business Manager of Local 10 terminated her employment with the Local at the conclusion of this meeting.

19. Despite having represented that she would repay the erroneously received monies, Ms. Napky never did so and pointedly refused to do so when pressed with the threat of legal action.

## COUNT I
## EQUITABLE RELIEF UNDER ERISA

20. Plaintiff hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 19 as if fully set forth herein.

21. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), authorizes plan fiduciaries, such as Plaintiff, to file suit:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

22. Among other things, ERISA mandates that the Fund hold all monies in trust, that said monies be held for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of administering the plan, and that the Plaintiff discharge its duties in accordance with the Fund's governing plan documents. 29 U.S.C. §§ 1103(a), (c)(1), 1104(a)(1)(D).

23. The Trust Agreement, one of the Fund's governing plan documents, provides the general rules governing the operation of the Fund, including the purposes for which monies of the Fund may be used (*i.e.*, providing training and educational programs and paying reasonable and necessary expenses for the operation and administration of the Fund).

24. Ms. Napky received, and has refused to return, $58,590.00 in impermissible, erroneous payments that are not authorized by ERISA, the Trust Agreement, or any other governing plan document.

25. As a result of the foregoing, Defendant was unjustly enriched in the aggregate amount of $58,590.00.

26. Based on information and belief, the amounts erroneously deposited with Defendant's bank remain in Defendant's possession.

**WHEREFORE,** Plaintiff prays judgment on Count I as follows:

A. For equitable restitution from Defendant for the erroneous and unwarranted payments totaling $58,590.00 that were not authorized by ERISA, the Trust Agreement, or any other plan document.

B. For interest on the unauthorized payment of $58,590.00 at the rate of ten percent

(10%) per annum from the date of each payment was made through the date of judgment and continuing to accrue thereafter until the Fund recovers the full amount due and owing.

  C.  Reasonable attorneys' fees and costs.

  D.  For such further relief as the Court may deem appropriate.

## COUNT II
## FEDERAL AND STATE COMMON LAW UNJUST ENRICHMENT

  27.  Plaintiff hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 26 as if fully set forth herein.

  28.  Plaintiff, albeit erroneously, conferred a benefit to Ms. Napky in the form of monies to which Defendant was not entitled.

  29.  Defendant knew that she was continuing to receive direct deposits from the Fund in the same amount as the weekly pay she received while employed by the Fund, notwithstanding the fact that she terminated her employment with the Fund.

  30.  Defendant should have reasonably expected to repay these monies to Plaintiff.

  31.  Despite Defendant's knowledge of the erroneous payments, she nevertheless accepted and retained same while being aware that the monies were assets of the Fund.

  32.  Absent relief, Ms. Napky will benefit from her acts and omissions by keeping money to which she is not entitled.

  **WHEREFORE,** Plaintiff prays judgment on Count II as follows:

  A.  For restitution or disgorgement from Defendant of the erroneous and unwarranted payments totaling $58,590.00.

  B.  For interest on the unauthorized payment of $58,590.00 at the rate of ten percent (10%) per annum from the date of each payment was made through the date of judgment and continuing to accrue thereafter until the Fund recovers the full amount due and owing.

C. Reasonable attorneys' fees and costs.

D. For such further relief as the Court may deem appropriate.

Dated: <u>May 17, 2024</u>                                                                 Respectfully submitted,

/s/ Jacob N. Szewczyk
Jacob N. Szewczyk, Esq. (VA Bar No. 89617)
Charles W. Gilligan, Esq.*
Sumbul I. Alam, Esq.**
**O'DONOGHUE & O'DONOGHUE LLP**
5301 Wisconsin Avenue NW, Suite 800
Washington, DC  20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
jszewczyk@odonoghuelaw.com
cgilligan@odonoghuelaw.com
salam@odonoghuelaw.com
*Admitted Pro Hac Vice*

***Application for Appearance Pro Hac Vice Forthcoming*