**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| **TRUSTEES OF THE PLUMBERS AND STEAMFITTERS UNION LOCAL NO. 10 APPRENTICESHIP FUND,** | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Civil Action No.: 3:24-cv-00180** |
| **VICTORIA NAPKY,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Victoria Napky ("Defendant" or "Ms. Napky"), by counsel and pursuant to

Fed. R. Civ. P. 12(b)(6) and 12(b)(1), and Local Rule 7(F) of the Rules of the Eastern District of

Virginia, in support of her Motion to Dismiss Plaintiff Trustees of the Plumbers and Steamfitters

Local No. 10 Apprenticeship Fund's ("Plaintiff" or the "Fund") First Amended Complaint (ECF

No. 13), states as follows:

I.      **INTRODUCTION**

This action is brought by a welfare benefit fund's Trustees (as fiduciaries) against a former

employee of the Fund. While the Fund is, of course, regulated by ERISA in many of its

relationships – this is not one of those relationships. Instead, the Fund seeks to invoke this Court's

jurisdiction by asserting that alleged erroneous payments to a former employee is subject to ERISA. It is not.

More specifically, in bringing this action, the Fund asks the Court to apply ERISA's civil enforcement provisions to its business dealings with a former employee. That relationship – between a fund or plan and its employee (or other third-party debtors/creditors) – has long been held to be outside of the purview of ERISA. Indeed, the plain language of 29 U.S.C. § 1132(a)(3)(B) (the ERISA provision on which Plaintiff relies), only permits redress for violations of ERISA and/or to enforce the terms of the applicable ERISA plan. Here, even after amending its complaint in response to Defendant's first Motion to Dismiss, _Plaintiff admits that it does not seek to enforce any plan provision related to the conduct at issue and still fails to identify an ERISA provision that Ms. Napky allegedly violated_. As such, as courts have consistently held, because the Fund is operating as a commercial entity (paying compensation to a former employee), state law governs, not the remedial scheme under ERISA.

What's more, putting the parties' relationship aside, courts, including the Fourth Circuit, have consistently held that the payment of wages alone is not in the purview of ERISA, as the distinction of benefit compensation (subject to ERISA) and wages must be carefully considered to avoid invalidating state law. In its original Opposition (ECF No. 12), Plaintiff claims repeatedly that the alleged payments are "not wages." While Defendant disagrees (as it defies logic to characterize the payments otherwise), Plaintiff misses the point. Regardless of whether the payments are wages, Plaintiff's claim still fails because, as explained, ERISA "regulates certain relationships," and the relationship between a Fund and its former employee (regardless of what the payments are called) are not governed by ERISA. In short, Plaintiff has failed to allege any

violation of ERISA or plan documents; nor does it seek to enforce ERISA or any plan. For that reason alone, Plaintiff's ERISA claim fails.

Moreover, even if Plaintiff could assert a violation of ERISA or terms of a plan, Plaintiff's claim still fails because 29 U.S.C. § 1132(a)(3)(B) only authorizes traditional equitable relief – not the monetary relief Plaintiff seeks. First, the basis of Plaintiff's claim is not equitable because "restitution in equity typically involved enforcement of 'a constructive trust or an equitable lien,'" neither of which exists here.[1] Court decisions finding an equitable claim under §1132(a) deal with constructive trusts or equitable liens created by agreement – through contract or the applicable plan. Even with Plaintiff's Amended Complaint, Plaintiff has not pointed to (and it cannot) an ERISA plan provision or regulation *that creates an equitable entitlement* (e.g., plan language creating entitlement to recoup benefits). Second, the nature of the remedy Plaintiff seeks is not equitable. The Fourth Circuit, supported by a long line of Supreme Court jurisprudence, confirms that a plaintiff cannot seek equitable relief by asserting money damages against a defendant's general assets. As such, as Plaintiff admits that it paid wages into Defendant's bank account as part of her general assets, Plaintiff has no right to an equitable remedy as a matter of law.[2]

Last, Plaintiff's federal and state unjust enrichment claims must also be dismissed. First, for similar reasons discussed above, Plaintiff cannot bring a federal common law unjust enrichment claim without invoking ERISA. Second, as Plaintiff's federal claims are subject to

---

[1] Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan, 577 U.S. 136, 142 (2016).
[2] Apparently agreeing with Defendant, Plaintiff's Amended Complaint adds that "[b]ased on information and belief, the amounts erroneously deposited with Defendant's bank remain in Defendant's possession." Am. Compl. ¶ 25. First, Plaintiff has no knowledge (on information and belief or otherwise) to claim what is in Ms. Napky's bank account. Second, as explained below, Plaintiff's added allegation does not matter because it still has not alleged an identifiable fund to which it is entitled. Nonetheless, should Plaintiff's claims survive, Defendant will move for immediate summary judgment on that issue because the funds are not intact and Plaintiff has no basis to claim otherwise.

dismissal, this Court should dismiss any remaining state law claim for lack of jurisdiction. For all of those reasons, as more fully discussed below, Plaintiff's Amended Complaint should be dismissed.

## II.    STATEMENT OF ALLEGED FACTS[3]

The Fund, a "named fiduciary" under ERISA, alleges that it employed Ms. Napky starting June 22, 2022, to assist the Fund's Training Director with office work. Am. Compl. ¶¶ 1, 7, 12. The Fund is established and maintained pursuant to its Restated Agreement and Declaration of Trust ("Trust Agreement"). Id. ¶ 1. The Plaintiff Trustees are entrusted with financial oversight of the Fund, administering the Fund in accordance with its governing plan documents, and making decisions binding on the Fund, among other functions. Id.

Upon hire, the Fund paid Ms. Napky $48.00 per hour, the overtime rate of a journeyperson of the Plumbers and Steamfitters Union Local 10 ("Local 10"), directly from the Fund into Ms. Napky's bank account. Id. ¶¶ 7, 12. "As with the Fund's training instructors, Ms. Napky's wage package did not include the pension, medical, and other fringe benefit contributions paid on behalf of employees working under the Local 10 CBA." Id.

On or around August 5, 2022, Ms. Napky accepted an offer to work as a permanent employee with Local 10. Id. ¶¶ 8, 13. From August 5, 2022 until on or around February 29, 2023, the Fund alleges that it continued depositing weekly payments into Ms. Napky's bank account due to an "internal communication error." Id. ¶¶ 7, 14, 15. Then, on or around February 29, 2023, Plaintiff alleges that it discovered the "error" and ceased the weekly payments. Id. ¶ 17. Plaintiff

---

[3] For purposes of this Motion only, Defendant states Plaintiff's alleged facts as true. By doing so, Defendant does not admit to any of the alleged facts asserted by Plaintiff.

alleges the total amount of payments due to this alleged administrator error was $58,590.00. Id. ¶ 24.

On March 3, 2023, Trustees met with Ms. Napky to discuss the alleged erroneous payments. Id. ¶ 18. Plaintiff alleges that Ms. Napky told the Trustees that she was unaware of the payments, but offered to pay the money back. Id. Nevertheless, Local 10 terminated Ms. Napky's employment at the conclusion of the meeting. Id. Plaintiff then claims that ultimately Ms. Napky "pointedly refused to [pay the alleged amounts] when pressed with the threat of legal action." Id. ¶ 19.

Plaintiff claims that "Ms. Napky received, and has refused to return, $58,590.00 in impermissible, erroneous payments that are not authorized by ERISA, the Trust Agreement, or any other governing plan document." Id. ¶ 23. Last, Plaintiff adds that "[b]ased on information and belief, the amounts erroneously deposited with Defendant's bank remain in Defendant's possession." Id. ¶ 23.

On March 11, 2024, Plaintiff filed its original Complaint. ECF No. 1. After Defendant moved to dismiss Plaintiff's Complaint for failure to state a claim, Plaintiff filed its Amended Complaint asserting the same claims, but adding additional references to Plaintiff's obligations as ERISA "fiduciaries" and generally that the "[t]he Trust Agreement, one of the Fund's governing plan documents, provides the general rules governing the operation of the Fund, including the purposes for which monies of the Fund may be used (i.e., providing training and educational programs and paying reasonable and necessary expenses for the operation and administration of the Fund)." Id. ¶ 23. As explained below, Plaintiff's amendments do not save its claims.

III.     **<u>STANDARD OF REVIEW</u>**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face" as required by Fed. R. Civ. P. 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "It requires the plaintiff to articulate facts that, when accepted as true, show that the plaintiff has stated a claim entitling him to relief." <u>Silverman v. Town of Blackstone</u>, 843 F. Supp. 2d 628, 631 (E.D. Va. 2012) (quoting <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir.2009)) (internal quotation marks omitted).

The Supreme Court explained further, in <u>Iqbal</u>, that the standard of facial plausibility requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556). "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action[,]" or "naked assertions devoid of further factual enhancement" will not suffice. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555, 557) (internal quotation marks omitted).

Determining whether a claim is plausible on its face is a context-specific task that requires the reviewing court to *draw on its judicial experience and common sense*. <u>Iqbal</u>, 556 U.S. at 679 (emphasis added). Although the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. <u>Silverman</u>, 843 F. Supp. 2d at 631. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678. Moreover, "[t]hreadbare recitals of the elements of a cause

6

of action, supported by mere conclusory statements, do not suffice." Id. As explained below,

Plaintiff's factual allegations do not entitle it to relief as a matter of law.

## IV.    ARGUMENT

### A.    Plaintiff Has Not Asserted – and It Cannot – a Claim Under 29 U.S.C. §1132(a)(3)(B)

Plaintiff's claim is simple: Plaintiff merely requests relief related to the overpayment of

wages (or "compensation" as Plaintiff prefers) to a former employee of the Fund. As explained

below, that simple claim is not governed by ERISA as a matter of law. Further, even if it were (or

if the Court disagrees), Plaintiff seeks _monetary relief_ stemming from payments made to Ms.

Napky's bank account – not "equitable relief" as set forth in 29 U.S.C. § 1132(a)(3)(B) and

established precedent. As such, as explained further below, Plaintiff's claim is not subject to

ERISA and this Court lacks jurisdiction over this action.

#### i.    Defendant's Acceptance of Alleged Overpayments is not an ERISA Violation and Plaintiff Does not Seek to Enforce the Provisions of the Terms of a Plan against Defendant.

The plain language of 29 U.S.C. § 1132(a)(3)(B) establishes the parameters of Plaintiff's

alleged cause of action: "a civil action may be brought . . . by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan,

or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce

any provisions of this title or the terms of the plan." The analysis can end there because Plaintiff

does not identity any violation of ERISA by Defendant, nor does Plaintiff seek to enforce the terms

of ERISA or any plan. Instead, it merely seeks to recoup the wages/payments made to a former

Fund employee – outside of the terms of the plan.

"ERISA is 'a comprehensive and reticulated statute,' the product of a decade of

congressional study of the Nation's private employee benefit system." Great-West Life & Annuity

Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (citing Mertens v. Hewitt Assocs., 508 U.S. 248,

251 (1993) (quoting Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 361

(1980)). As such, courts must be "especially 'reluctant to tamper with [the] enforcement scheme'

embodied in the statute by extending remedies not specifically authorized by its text." Id. (quoting

Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)). The Fourth Circuit has long

understood the same, holding that ERISA "was not designed to address every conceivable aspect

of an employee's monetary rights," specifically stating – as applicable here – that "it is not

primarily concerned with hourly wages and overtime pay, the domain of the FLSA and its state

counterparts." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 261 (4th Cir.

2006) (citing Massachusetts v. Morash, 490 U.S. 107, 115 (1989)).

Put more simply, the relationship at issue here – the Fund and its former employee – is not

regulated by ERISA. ERISA "regulates certain *relationships*: for instance, the relationship

between plan and plan member, between plan and employer, between employer and employee (to

the extent an employee benefit plan is involved), and between plan and trustee. Gen. Am. Life Ins.

Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993) (citing J. Daniel Plants, Note, Employer

Recapture of ERISA Contributions Made by Mistake, 89 Mich. L. Rev. 2000, 2017 (1991)). Those

relationships are not at issue here. Instead, Plaintiff seeks to have the Court hold that ERISA

regulates the relationship between a fund and its employees. That is not so:

> But ERISA doesn't purport to regulate those relationships where a
> plan operates just like any other commercial entity - for instance, the
> relationship between the plan and its own employees, or the plan
> and its insurers or creditors, or the plan and the landlords from whom
> it leases office space. State law is allowed to govern these
> relationships, because it's much less likely to disrupt the ERISA
> scheme. Moreover, if these relationships were governed by federal
> law, federal courts would have to invent a federal common law of
> contracts, torts, property, corporations, something that would run
> against the grain of our federal system. Cf., e.g., Federal Tort Claims

8

> Act, 28 U.S.C. § 2674 (incorporating state law for torts committed
> by the federal government, rather than creating a federal law of
> torts).

Castonguay, 984 F.2d at 1522.

Based on this basic understanding, courts, relying on Supreme Court precedent, have consistently dismissed claims (or rejected arguments of preemption by ERISA) when the relationship stems from the plan's business operations (*e.g.*, a relationship between the fund and an employee). See, e.g., Hermann Hosp. v. Pan Am. Life Ins. Co., 932 F. Supp. 899, 901 (S.D. Tex. 1996) (ERISA "would not preempt a landlord's claim for rent owed by the benefit plan for its office operation; nor would the law preempt a plan employee's wage.") (citing Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 832-33 (1988) (holding that routine failures to pay business creditors are not preempted)); see also Carolina Care Plan, Inc. v. Auddie Brown Auto Sales of Florence, Inc., Civil Action No. 4:06-00792-RBH, 2007 U.S. Dist. LEXIS 24962, at *14 (D.S.C. Mar. 31, 2007) ("courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities-the employer, the plan, the plan fiduciaries, and the beneficiaries- than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.") (quoting Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 249 (5th Cir. 1990)); Strategic Outsourcing, Inc. v. Commerce Benefits Grp. Agency, 54 F. Supp. 2d 566, 573 (W.D.N.C. 1999) ("ERISA does not preempt regulation of those relationships 'where a plan operates just like any other commercial entity-for instance the relationship between the plan and its own employees, or the plan and its insurers or creditors.'") (quoting Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1360 (9th Cir. 1997)).

Similar to its Opposition to Defendant's First Motion to Dismiss (ECF No. 12), Plaintiff's

Amended Complaint attempts to invoke ERISA by claiming that ERISA is "implicate[d]" –

referencing the Trustee's obligations as fiduciaries. See Opp. at 4 (ECF No. 12); Am. Compl. ¶

23. Indeed, in its Opposition, Plaintiff stated that:

> And Ms. Napky's actions – or lack thereof – implicate various
> provisions of ERISA. ERISA mandates that all monies be held in
> trust for the "exclusive purposes of *providing benefits* . . . and
> defraying reasonable expenses of *administering* the plan." 29 U.S.C.
> § 1103(c)(1) (emphasis added). Section 404(a)(1)(D) of ERISA, 29
> U.S.C. § 1104(a)(1)(D) requires named fiduciaries to administer the
> Fund in accordance with its governing documents. Furthermore,
> ERISA makes any person who exercises discretionary controls over
> assets of the plan, as here, a fiduciary. 29 U.S.C. § 1002(21).

That is Plaintiff's entire argument in support of its assertion that it seeks to "redress

violations of ERISA." Opp. at 4. First, the above – and the Amended Complaint – makes no

reference to Ms. Napky's actions; rather, the statutes cited above and in the Amended Complaint[4]

all reference the Trustees' (Plaintiff's) obligations and actions. In short, Plaintiff has not alleged

any facts claiming (because it cannot) that Ms. Napky violated ERISA. Second, in its Opposition,

the Fund admitted that it does not allege any violation, or seek the enforcement of, "the terms of

the plan" – only that the actions here "implicate various provisions of ERISA." See Opp. at 4.

In addition, putting the relationship of the parties aside, courts, including the Fourth Circuit,

have consistently held that the payment of wages is not governed by ERISA.[5] Perdue Farms, 448

F.3d at 261 ("'the distinction between 'wage' compensation (not regulated by ERISA) and

'benefit' compensation (regulated by ERISA) must be sensitively drawn to avoid invalidating state

---

[4] 29 U.S.C. §§ 1103(a), (c)(1), 1104(a)(1)(D). Am. Compl. ¶ 22.

[5] Indeed, if ERISA covers the recoupment of the overpayment of wages to a Fund employee, then
ERISA must likewise cover a Fund employee seeking owed wages from the Fund. That is not the
case, as such claim is the province of state law or the Fair Labor Standards Act.

regulatory schemes Congress intended to encourage.'") (quoting <u>Cal. Hosp. Ass'n v. Henning</u>, 770

F.2d 856, 861 (9th Cir. 1985)); <u>WSB Elec. v. Curry</u>, 88 F.3d 788, 791 (9th Cir. 1996) ("It is well

settled that wages are a subject of traditional state concern, and are not included in ERISA's

definition of 'employee benefit plan.' Thus, regulation of wages per se is not within ERISA's

coverage.") (citing <u>Morash</u>, 490 U.S. at 118 (holding that ERISA does not preempt a state law

regulating vacation pay)); <u>see also</u> 29 C.F.R. § 2510.3-1 ("the terms 'employee welfare benefit

plan' and 'welfare plan' shall not include— (1) Payment by an employer of compensation on

account of work performed by an employee . . .").[6]

Nonetheless, putting the classification of the payments aside, Plaintiff pleads its way out

of any ERISA claim as it admits that the "erroneous payments [] are not authorized by ERISA, the

Trust Agreement, or any other governing plan document." Am. Compl. ¶ 24. In short, as Plaintiff

admits, in requesting a return of the payments at issue here – alleged payments to a former

employee – Plaintiff has not alleged that Ms. Napky violated either ERISA or any applicable plan.

<u>See, e.g.</u>, <u>Hesse v. Case New Holland Indus., Inc.</u>, No. 20-CV-1267-JPS, 2021 U.S. Dist. LEXIS

142316, at *5 (E.D. Wis. July 30, 2021) ("Defendant has not pleaded that Plaintiff, in seeking to

recoup and recouping the overpayments, violated either ERISA or the Plan. The Court directs the

parties to a Seventh Circuit decision, <u>Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical</u>

<u>College of Wisconsin, Inc.</u>, 657 F.3d 496 (7th Cir. 2011), that makes clear that Plaintiff's failure

---

[6] In its Opposition to Defendant's first Motion to Dismiss, Plaintiff attempts to claim that the payments made in error are not wages. <u>See</u> Opp. at 4. That strains credulity. An organization that continues to pay an employee after termination and seeks to recover those payments is certainly seeking overpaid/erroneous "wages." Indeed, companies regularly seek the return of alleged unearned wages in state court (where this case should be) based on the theory of unjust enrichment. <u>See, e.g.</u>, <u>Norfolk Cmty. Servs. Bd. v. Berardi</u>, 84 Va. Cir. 310, 310 (Cir. Ct. 2012) ("The employer complained that one former employee improperly received a salary and other benefits from the time of her suspension.").

11

to allege that Defendant violated ERISA or the Plan forecloses Plaintiff from bringing his claims in federal court").

Kolbe & Kolbe Health & Welfare Benefit Plan is instructive. There, the Seventh Circuit, relying on Supreme Court precedent, made clear that an ERISA Section 502(a)(3) claim (which is 29 U.S.C. § 1132(a)(3)) "allows a plan fiduciary, such as plaintiffs . . ., to bring claims in equity to enforce provisions of the plan, but not claims at law."[7] 657 F.3d at 502. The case involved an ERISA plan that paid medical providers for medical services they provided to an individual who is not and never was covered under the ERISA plan. Id. at 503. While the plaintiffs claimed to seek enforcement of plan terms based on the erroneous payment benefits, the Seventh Circuit held that plaintiffs admitted they had no ERISA claim because the benefit payments at issue were inadvertently made to a person not covered by the Plan and thus not authorized by ERISA. Id. at 502-03. As the court aptly put, "plaintiffs are seeking equitable relief to enforce a term of its Plan that by its own allegations was never violated and cannot be enforced . . .." Id. at 503. This case is even further removed, as the payments at issue here are not even benefits or remotely subject to plan provisions or ERISA. Plaintiff simply does not seek to enforce any term of an ERISA plan or a violation of ERISA by Ms. Napky. Instead, "ERISA has nothing to do with this case." Id. For that reason alone, Plaintiff's ERISA claim must be dismissed.

> **ii.      Even if Plaintiff's Claim was Actionable, Plaintiff Does Not Seek Equitable Relief Pursuant to 29 U.S.C. § 1132(a)(3)(B).**

Plaintiff's ERISA claim fails for a separate, equally dispositive, reason. Even if Plaintiff can assert that Ms. Napky's status as a Fund (and then Union) employee invokes ERISA

---

[7] As explained below, Plaintiff's claims are at law, not equity, and subject to dismissal for that separate reason.

regulations and/or the terms of the plan, Plaintiff can only seek equitable relief through its §
502(a)(3) claim, which it fails to do.

The Supreme Court has "interpreted the term 'appropriate equitable relief' in § 502(a)(3)
as referring to 'those categories of relief' that, traditionally speaking (i.e., prior to the merger of
law and equity) 'were typically available in equity.'" CIGNA Corp. v. Amara, 563 U.S. 421, 439
(2011) (citing Sereboff v. Mid Atlantic Medical Services, Inc., 547 U. S. 356, 361 (2006) (quoting
Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993)). And, "whether the remedy a plaintiff seeks
'is legal or equitable depends on [(1)] the basis for [the plaintiff's] claim and [(2)] the nature of
the underlying remedies sought.'" Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health
Ben. Plan, 577 U.S. 136, 142 (2016) (citing Sereboff, 547 U. S. at 363) (internal quotation marks
omitted); Local 109 Ret. Fund v. First Union Nat'l Bank, 57 F. App'x 139, 140 (4th Cir. 2003)
("Our inquiry must focus on 'the basis for [the plaintiff's] claim' and the nature of the underlying
remedies sought") (citations omitted). Plaintiff's claim fails on both accounts.

First, while Plaintiff claims to seek alleged restitution,[8] which can be a form of equitable
relief, "not all relief falling under the rubric of restitution is available in equity." Great-West Life
& Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002). Here, Plaintiff's label of "restitution"
does not suffice. 109 Ret. Fund, 57 F. App'x at 140 ("plaintiff's decision to label his claim as one
seeking traditional forms of equitable relief is not dispositive"). As the Supreme Court has
explained, "restitution in equity typically involved enforcement of 'a constructive trust or an
equitable lien, where money or property identified as belonging in good conscience to the plaintiff
could clearly be traced to particular funds or property in the defendant's possession.'" Montanile,

---

[8] To be clear, Defendant denies she owes Plaintiff anything, as Plaintiff agreed to pay Defendant
the wages at issue.

577 U.S. at 143 (quoting Knudson, 534 U.S. at 213). Moreover, the Supreme Court decisions holding that an equitable claim has been established all deal with constructive trusts or equitable liens created by agreement. See Montanile, 577 U.S. at 142-143 (discussing cases).

Here, no constructive trust or equitable lien is alleged to have been created by the parties – and Plaintiff's Amended Complaint does not cure that fatal defect. Plaintiff only cites to general ERISA language about a fiduciary's responsibility to hold monies "for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of administering the plan . . .." Am. Compl. ¶ 22. However, the Plaintiff's (as fiduciaries) alleged "error" to continue payments to a former employee does not create an equitable entitlement pursuant to ERISA or any plan. Indeed, the same would be the case if the Fund made overpayments to a contractor that it hired to paint its offices. While an alleged error, there is no equitable lien created by those payments. That is because, as discussed above, Plaintiff has not alleged (and it cannot) that an ERISA plan provision or ERISA provision is at issue to create such equitable entitlement. See 109 Ret. Fund, 57 F. App'x at 140 ("Because no trust or trust relationship flows from the certificate of deposit, the traditional equitable remedies to protect a trust, such as accounting, restitution, and disgorgement, are not available here"); Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc., 756 F.3d 356, 365 (5th Cir. 2014) ("ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets.").

Second, even if Plaintiff's claim were equitable (it is not), the nature of the remedy sought is not equitable. The Supreme Court has made "clear that a plaintiff could ordinarily enforce an equitable lien only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (e.g., identifiable property

14

like a car)." <u>Montanile</u>, 577 U.S. at 144-45. Relying on this long line of Supreme Court jurisprudence, as to restitution specifically, the Fourth Circuit holds:

> to qualify as "equitable," restitutionary relief imposed to remedy unjust enrichment must be proprietary, not personal: The plaintiff cannot recover out of the defendant's general assets. Instead, the plaintiff must (1) identify certain property or money "belonging in good conscience" to him, and (2) that property must "clearly be traced to particular funds or property in the defendant's possession."

<u>Rose v. PSA Airlines, Inc.</u>, 80 F.4th 488, 501 (4th Cir. 2023) (citing <u>Knudson</u>, 534 U.S. at 213); <u>see also</u> <u>Montanile</u>, 577 U.S. at 145) ("[e]quitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets.'") (quoting 4 S. Symons, <u>Pomeroy's Equity Jurisprudence</u> § 1234, p. 694 (5th ed. 1941)); <u>Akers v. Md. State Educ. Ass'n</u>, 990 F.3d 375, 381 (4th Cir. 2021) (same).

Here, Plaintiff's "weekly payments" are not an identifiable fund for purposes of equitable relief. <u>Akers</u>, 990 F.3d at 381-382 ('Because the plaintiffs here are unable to point to any identifiable fund in the union defendants' possession, we follow the reasoning of the Sixth and Seventh Circuits and conclude that, in substance, the plaintiffs' claim for relief is a claim for damages."). In an effort to claim an identifiable fund, Plaintiff brazenly adds the allegation that "[b]ased on information and belief, the amounts erroneously deposited with Defendant's bank remain in Defendant's possession." Am. Compl. ¶ 26. Putting aside that Plaintiff has no knowledge to make such a claim, that allegation does not save Plaintiff's claim because (i) as explained above, the basis of Plaintiff's claim is not equitable, and (ii) Plaintiff still does not (and cannot) allege a specific property in possession of Defendant to which it is entitled. <u>Montanile</u>, 577 U.S. at 145; <u>Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC</u>, Civil Action No. DKC 14-2376, 2015 U.S. Dist. LEXIS 91689, at *25-26 (D. Md. July 15, 2015) ("the only allegation

15

supporting that the Cigna entities can specifically identify and trace plan funds is that the 'overpayments [at issue] are within the possession and control of the Defendants.' [citation omitted]. The Cigna entities have not alleged that the overpayments were kept in separate accounts or otherwise how they are separate and distinct from the ASCs' general assets.") (citing <u>Cent. States, Se. & Sw. Areas Health & Welfare Fund</u>, 756 F.3d at 366)).

Accordingly, Plaintiff's claim is one for general damages, not equitable restitution, and Plaintiff's claim fails for that separate reason.

     **B.**     **To the Extent Plaintiff Pleads Federal and State Common Law Claims for Unjust Enrichment, They Must Also be Dismissed**

          **i.**     **Because Plaintiff's Claim is Not Subject to ERISA, Plaintiff's Federal Common Law Claim for Unjust Enrichment Fails.**

Plaintiff's alleged federal common law claim for unjust enrichment fails because its ERISA claim fails. While "[i]t is true that, in interpreting the provisions of ERISA, federal courts are charged with the responsibility of fashioning a federal common law 'to deal with issues involving rights and obligations under private welfare and pension plans,'" here, "because the rights and obligations under the Plan are not at issue," any common law claim under ERISA likewise fails. <u>Kolbe & Kolbe Health & Welfare Benefit Plan</u>, 657 F.3d 496, 504 (7th Cir. 2011) (citing <u>Buckley Dement, Inc. v. Travelers Plan Adm'rs. of Ill., Inc.</u>, 39 F.3d 784, 789 (7th Cir. 1994) (quoting <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 24 n. 26 (1983)).

In short, just as with its underlying ERISA claim, Plaintiff has failed to point to any connection with plan provisions or the application of ERISA that would permit the rare "exception" for this Court to create a common law claim. <u>Elmore v. Cone Mills Corp.</u>, 187 F.3d 442, 449 (4th Cir. 1999) ("There is no express right in ERISA for unjust enrichment and the plaintiffs here have not established 'a particularly strong affirmative indication that such a common

law right would effectuate a statutory policy' of ERISA on the facts of the case. [internal citations omitted] . . . Accordingly we affirm the district court's ruling that the plaintiffs' attempt to obtain funds outside of the plan documents on a federal common law theory of unjust enrichment must fail."); Total Renal Care of N.C., L.L.C. v. Fresh Mkt., Inc., No. 1:05CV00819, 2008 U.S. Dist. LEXIS 18889, at *38-39 (M.D.N.C. Mar. 6, 2008) ("permitting an unjust enrichment claim to go forward in the instant matter would not effectuate an express term of the Plans or further the policies of ERISA").

Accordingly, because ERISA is not implicated, even if properly pled, Plaintiff cannot pursue a federal common law unjust enrichment claim; and, therefore, this claim must be dismissed as a matter of law.

### ii.    Any State Law Claim Should be Dismissed for Lack of Jurisdiction

Given that Plaintiff's claims under federal law must be dismissed (as described above), Defendant further requests that the Court dismiss any remaining state law claims (*i.e.*, unjust enrichment) for lack of jurisdiction. It is well-settled that a district court "may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction." Fields v. Sprint Corp., Civil Action No. 3:15cv618, 2016 U.S. Dist. LEXIS 122504, at *8-9 (E.D. Va. Sep. 9, 2016) (citing 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well)).

Given the dismissal of Plaintiff's ERISA claims, the Court does not have original jurisdiction over any state law claim for unjust enrichment. As articulated by the Fourth Circuit, a District Court should consider "'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy,'" when

evaluating whether to retain jurisdiction over state law claims. Id. at *9 (citing Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995)). All such factors here weigh in favor of dismissal.

First, as to fairness and convenience, this case is in the earliest stage of litigation (the pleadings stage), and if Plaintiff "subsequently file [its] claims in a court of appropriate jurisdiction, the parties would, for all intents and purposes, begin at the same stage of the litigation process." Id. at *13. Second, no issues of federal policy underly a simple Virigina state law unjust enrichment claim. Id. at *12 (dismissing case where "all remaining counts allege causes of action under Virginia law"). Third, given that Virginia law governs any state law unjust enrichment claim, "[i]t would be imprudent for this Court, one of limited jurisdiction, to suggest that it could more readily decide matters of Virginia law than Virginia courts could." Id. at *13.

Accordingly, based on those well-settled factors, Defendant respectfully requests that the Court decline to exercise jurisdiction over any state law unjust enrichment claim asserted by Plaintiff.

## V.    CONCLUSION

As explained above, the alleged payments at issue have nothing to do with (i) ERISA or benefits (regardless of whether they are wages or not); or, at the very least, (ii) Ms. Napky violating ERISA. In sum, this is an action where the Fund is operating as a commercial entity – nothing more. As such, given that Plaintiff has already had an opportunity to amend its complaint and any further "amended Complaint would be futile," the Court should dismiss Plaintiff's claims in their entirety. Young v. Capital One Bank USA, N.A., No. 1:22-cv-01326 (PTG/WEF), 2024 U.S. Dist. LEXIS 32904, at *21 (E.D. Va. Feb. 26, 2024) ("amended Complaint would be futile because no amendment can cure the discussed deficiencies related to . . . Plaintiff's claims.") (citing Cozzarelli v. Inspire Pharms., Inc., 549 F.3d 618, 630 (4th Cir. 2008) (affirming dismissal with prejudice

under Rule 12(b)(6) where "amendment would be futile in light of the fundamental deficiencies in

[Plaintiff's] theory")).

Based on the foregoing, Defendant respectfully requests that Plaintiff's Amended

Complaint be dismissed for failure to state a claim and that any remaining state law claims be

dismissed for lack of supplemental jurisdiction.


Respectfully Submitted,

*/s/ Mark J. Passero*
Mark J. Passero (VSB No. 90463)
D. Scott Laws (VSB No. 99436)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*mpassero@lawrencequeen.com*
*slaws@lawrencequeen.com*

*Counsel for Defendant*

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 31st day of May 2024, the foregoing document was served via the

Court's ECF system upon all counsel of record, including the following:

Jacob N. Szewczyk, Esq. (VSB No. 89617)
Charles W. Gilligan, Esq. (admitted pro hac vice)
Sumbul I. Alam, Esq. (pro hac vice forthcoming)
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC 20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
*jszewczyk@odonoghuelaw.com*
*cgilligan@odonoghuelaw.com*
*salam@odonoghuelaw.com*

*Counsel for Plaintiff*

*/s/ Mark J. Passero*
Mark J. Passero (VSB No. 90463)
D. Scott Laws (VSB No. 99436)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*mpassero@lawrencequeen.com*
*slaws@lawrencequeen.com*

*Counsel for Defendant*