IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS AND STEAMFITTERS UNION LOCAL NO. 10 APPRENTICESHIP FUND,<br><br>**Plaintiff,**<br><br>v.<br><br>VICTORIA NAPKY,<br><br>**Defendant.** | Civil Action No.: 3:24-cv-00180 |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Victoria Napky ("Defendant" or "Ms. Napky"), by counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), and Local Rule 7(F) of the Rules of the Eastern District of Virginia, in further support of her Motion to Dismiss Plaintiff Trustees of the Plumbers and Steamfitters Local No. 10 Apprenticeship Fund's ("Plaintiff" or the "Fund") Amended Complaint, submits this Reply Memorandum in response to Plaintiff's Opposition (ECF No. 16), stating as follows:

I. **Plaintiff's Opposition Confirms that Plaintiff Has No Claim Under ERISA**

The crux of Plaintiff's argument – attempting to fit its claim within the confines of ERISA – focuses on the classification of the *alleged* erroneous payments at issue as "wages." See Opp. at 3-4. Plaintiff misses the mark. Plaintiff focuses on Defendant's alleged "characterization" of the

compensation at issue as wages. Opp. at 3. Plaintiff, however, cherry-picks Defendant's Motion to Dismiss and once more "misses the point. Regardless of whether the payments are wages, Plaintiff's claim still fails because, as explained, ERISA 'regulates certain relationships,' and the relationship between a Fund and its former employee (regardless of what the payments are called) are not governed by ERISA." See Def.'s Memo. ("Moving Brief") [ECF No. 15], at 2. To be clear, in response to Plaintiff's red herring argument (including fn. 1 to its Opposition), Defendant does not – and need not – rely on facts outside of the pleadings. Taking Plaintiff's allegations as true – that the compensation paid was not wages – Plaintiff's claim still fails as a matter of law for two separate, but equally dispositive, reasons.

> **A.** *Just as in its Amended Complaint, Plaintiff's Opposition Fails to Allege that Ms. Napky Violated ERISA or the Terms of a Plan, or that it Seeks to Enforce any ERISA or Plan Provision, to Assert a Claim Under 29 U.S.C. § 1132(a)(3)(B).*

As stated in Defendant's Moving Brief, the plain language of 29 U.S.C. § 1132(a)(3)(B) establishes the parameters of Plaintiff's alleged cause of action: "a civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which ***violates any provision of this title or the terms of the plan***, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to ***enforce any provisions of this title or the terms of the plan***." See Moving Brief at 7 (emphasis added). As a threshold matter, regardless of whether Plaintiff has pleaded any obligations arising out of ERISA or the Plan (inclusive of its Trust Agreement), what is missing from Plaintiff's Amended Complaint and its argument is any allegation that **<u>Ms. Napky's actions</u>** violated ERISA or the terms of any Plan or, separately, that the Fund seeks to enforce the term of any ERISA or plan provision entitling it to recoupment of monies. For that reason alone, Plaintiff's claim fails.

Plaintiff's sole argument to attempt to pull Ms. Napky into ERISA's purview is as follows:

2

> the Fund's Trust Agreement provides, *inter alia*, the purposes for which monies of the Fund may be used, *viz.*, providing training and educational programs and paying reasonable and necessary expenses for the operation and administration of the Fund. (Am. Compl. ¶ 23.) The Amended Complaint also cites to ERISA's requirement that plan assets be held in trust. (Am. Compl. ¶ 22.) As the Amended Complaint explains, Ms. Napky's receipt of plan assets after terminating her employment with the Fund violates the terms of a governing plan document because Defendant received and has refused to return money that is not authorized under the terms of the Trust Agreement and to which Defendant has no legal right, a violation of which Plaintiff may enforce through Section 502(a)(3) of ERISA.

Opp. at 5.

The above makes no reference to Ms. Napky's actions; rather, it makes reference to the Trustees' (Plaintiff's) actions. Defendant was never a fiduciary of the Fund, and Plaintiff's Amended Complaint does not allege – nor can it – that Ms. Napky had any "discretionary controls over assets of the plan" because she did not. See Am. Compl. ¶ 12 (Defendant hired to "assist the Fund's Training Director in the office").[1] Plaintiff does not – and cannot – point to any decision in which a person who did not violate ERISA or a Plan, or had any obligation arising from a Plan or ERISA, was subject to its enforcement proceedings.[2] Moreover, while the Trust Agreement may provide the "purposes for which monies of the Fund may be used, *viz.*, providing training and educational programs and paying reasonable and necessary expenses for the operation and administration of the Fund," Plaintiff has not pled (because it cannot) that the Trust Agreement or

---

[1] As explained below, not every payment by a Fund implicates ERISA. These payments – as admitted throughout Plaintiff's Amended Complaint – have nothing to do with benefits or a plan at all. Instead, they are simply related to the Fund operating as a business.

[2] Instead, taking the Amended Complaint as true, it is the Plaintiff alone that has obligations under the Trust Agreement and Plan. As an employee – or former employee – of the Fund, Ms. Napky has no obligations related to the Trust Agreement or Plan; and Plaintiff does not plead any in its Amended Complaint.

3

any other Plan document ***permits recoupment of payments not used for those purposes***. That is what it would take to for Plaintiff to be able to seek payment through ERISA's enforcement provision.

In fact, Defendant does not cite a single case in support of its argument, other than a decision supporting its proposition that the Trust Agreement ***can be*** a "plan document." Opp. at 5 (citing Mull ex rel. Mull v. Motion Picture Indus. Health Plan, 865 F.3d 1207, 1209-10 (9th Cir. 2017)). Notably, that case confirms Defendant's position – not Plaintiff's. There, the plan had paid out benefits to an individual, Lenai, for injuries; but a third-party also compensated Lenai. Mull, 865 F.3d at 1208. As a result, the "Plan then instituted its overpayment procedures [pursuant to reimbursement/recoupment provisions] to recoup $100,000 from future benefits payable to Norman and the other beneficiaries under his policy." Id. at 1208-09. The Board (as fiduciaries) filed a counterclaim for "equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), seeking an equitable lien or a constructive trust to recover the $100,000 received by Lenai from the third party." Id. While the counterclaim was later dismissed due to bankruptcy, those facts demonstrate the purpose of equitable relief under ERISA § 502(a)(3) as confirmed by numerous courts: "this section allows a plan fiduciary . . . to bring claims in equity to enforce provisions of the plan, but not claims at law." Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc., 657 F.3d 496, 502 (7th Cir. 2011). In Mull ex rel. Mull, a specific provision of the plan permitted ***recoupment of the overpayment of benefits***, creating an equitable lien. That is because "ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets." Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc., 756 F.3d 356,

4

365 (5th Cir. 2014). Here, there is no agreement between the parties at issue (the Fund and Ms. Napky) to deliver the recoupment of assets through the Plan.

While citing no case law, Plaintiff attempts to avoid this well-settled jurisprudence by arguing that Kolbe is inapposite. Indeed, Plaintiff summarily states that the "defects in Kolbe are not present here . . . ." without any explanation as to how the case is distinguishable. Opp. at 5-6. Plaintiff is flat wrong. Kolbe stands for the correct proposition that a fiduciary cannot seek to enforce a provision of the plan when the payments at issue were not subject to ERISA or any Plan, and, thus, the plaintiff has no entitlement to funds ***through the Plan***. 657 F.3d 496. Again, the payments at issue in Kolbe could not be recovered because the overpaid benefits were not to "covered persons" under the plan – which permitted the recoupment of overpaid benefits to covered persons. Id. at 502-03. Here, not only is there no covered person nor plan provision permitting recoupment of the payments at issue, there is also no legal relationship between the parties invoking any plan provision to begin with. Indeed, the Seventh Circuit did not permit recoupment by the fiduciary in Kolbe simply because "Defendant received and has refused to return money that is not authorized under the terms of the [Plan] and to which Defendant has no legal right." Opp. at 5.

Instead, the Circuit Court correctly held that the Fund could pursue its alleged overpayment through state law claims. Again, the facts here are even further removed, as the payments at issue here are not even benefits or remotely subject to plan provisions or ERISA. Plaintiff simply does not seek to enforce any term of an ERISA plan or a violation of ERISA by Ms. Napky. Instead, "ERISA has nothing to do with this case." Kolbe, 657 F.3d at 503. For that reason alone, Plaintiff's ERISA claim must be dismissed. Indeed, if Plaintiff were permitted to pursue this claim against

Ms. Napky, it would open the flood gates to any third-party being subject to ERISA simply because a Fund made an (alleged) mistaken payment to them. That cannot be.

> **B.** *Regardless of Plaintiff's Claim that the Payments are not Wages, the Payments are Still Related to the Fund Operating as a Commercial Entity.*

Confirming Plaintiff's novel theory, what is missing from Plaintiff's Opposition is any discussion of the numerous case decisions supporting dismissal of this action. While Plaintiff focuses on its argument that the alleged payments are "not wages" – Plaintiff misses the point. Regardless of whether the payments are wages or not, Plaintiff's claim still fails because, as argued in Defendant's Moving Brief, ERISA "regulates certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee." Gen. Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993) (citing J. Daniel Plants, Note, Employer Recapture of ERISA Contributions Made by Mistake, 89 Mich. L. Rev. 2000, 2017 (1991)). Those relationships are not at issue here. Strategic Outsourcing, Inc. v. Commerce Benefits Grp. Agency, 54 F. Supp. 2d 566, 573 (W.D.N.C. 1999) ("ERISA does not preempt regulation of those relationships 'where a plan operates just like any other commercial entity-for instance the relationship between the plan and its own employees, or the plan and its insurers or creditors.'" (quoting Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1360 (9th Cir. 1997)); see Def.'s Moving Brief at 7-8 (collecting cases).

That is the case here. The Fund alleges that it employed Ms. Napky starting June 22, 2022, to assist the Fund's Training Director with office work. Am. Compl. ¶ 12. From August 5, 2022 until on or around February 29, 2023, the Fund alleges that it continued depositing weekly payments into Ms. Napky's bank account "due to an internal communication error." Id. ¶¶ 14-15.

Accordingly, taking the facts as true, Plaintiff's Amended Complaint confirms that these payments were an administrative error that resulted in continued weekly payments to Defendant.[3]

Even if the Court agrees that these payments are – somehow – not wages, they are directly related to Defendant's status as an employee with the Fund (*i.e.*, the Fund operating as a business). As such, regardless of Plaintiff's characterization of the payments, this is an action related to the Fund acting as a commercial entity when it submitted alleged erroneous payments (wages or otherwise) to its former employee – a relationship not governed by ERISA. As such, for that separate reason, Plaintiff's claim fails as a matter of law.

## II.  Plaintiff Misconstrues Supreme Court and Fourth Circuit Precedent That Confirms Plaintiff's Claim is Not Equitable

As stated in Defendant's Moving Brief, even if Plaintiff can somehow assert that Ms. Napky's status as a former Fund employee invokes ERISA regulations and/or the terms of a plan, Plaintiff can only seek equitable relief through its § 502(a)(3) claim, which it fails to do. As required by the Supreme Court, "whether the remedy a plaintiff seeks 'is legal or equitable depends on [(1)] the basis for [the plaintiff's] claim and [(2)] the nature of the underlying remedies sought.'" Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan, 577 U.S. 136, 142 (2016) (citing Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 363 (2006) (internal quotation marks omitted)); Local 109 Ret. Fund v. First Union Nat'l Bank, 57 F. App'x 139, 140 (4th Cir. 2003)

---

[3] To be clear, Plaintiff's attempt to claim that the payments made in error are not wages strains credulity. A company that continued to pay an employee after termination and seeks to recover those payments is certainly seeking overpaid/erroneous "wages." As stated in Defendant's Moving Brief, companies regularly seek the return of alleged unearned wages in state court (where this case should be) based on the theory of unjust enrichment. See, e.g., Norfolk Cmty. Servs. Bd. v. Berardi, 84 Va. Cir. 310, 310 (Cir. Ct. 2012) ("The employer complained that one former employee improperly received a salary and other benefits from the time of her suspension."). Nonetheless, Plaintiff's red herring argument is of no matter.

("Our inquiry must focus on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought") (citations omitted). Plaintiff's claim fails on both accounts.

First, Plaintiff's Opposition ignores the first requirement – that the basis of the claim must be equitable. While Plaintiff claims to seek alleged restitution, which can be a form of equitable relief, "not all relief falling under the rubric of restitution is available in equity." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002). Here, Plaintiff's label of "restitution" does not suffice. 109 Ret. Fund, 57 F. App'x at 140 ("plaintiff's decision to label his claim as one seeking traditional forms of equitable relief is not dispositive"). As the Supreme Court has explained, "restitution in equity typically involved enforcement of 'a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" Montanile, 577 U.S. at 143 (quoting Knudson, 534 U.S. at 213).

The Supreme Court decisions holding that an equitable claim has been established all deal with constructive trusts or equitable liens – an entitlement created by the terms of a plan or ERISA itself. See Montanile, 577 U.S. at 142-143 (discussing cases). Plaintiff ignores that part of the analysis – simply arguing that because it can assert that Defendant was allegedly unjustly enriched through overpayments, it can recover the compensation. Opp. at 6-7. Unlike the cases cited above, there is no ERISA or plan provision entitling Plaintiff to the recoupment of funds – and Plaintiff makes no such argument in its Opposition. That is because, as discussed above, Plaintiff has not alleged (and it cannot) that an ERISA plan or provision is at issue to create such equitable entitlement. See 109 Ret. Fund, 57 F. App'x at 140 ("Because no trust or trust relationship flows from the certificate of deposit, the traditional equitable remedies to protect a trust, such as accounting, restitution, and disgorgement, are not available here"); Cent. States, Se. & Sw. Areas

8

Health & Welfare Fund v. Health Special Risk, Inc., 756 F.3d 356, 365 (5th Cir. 2014) ("ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets."). For that reason alone, Plaintiff's claim must be dismissed.

Second, even if the basis of Plaintiff's claim were equitable (it is not), the nature of the remedy sought is not equitable. Plaintiff argues that its claim is equitable because (i) it identifies the alleged assets as "post-employment, improper payments deposited in Ms. Napky's bank account, not her general assets," (ii) it alleges that "the monies retained by Ms. Napky belong in good faith to the Fund," and (iii) "Plaintiff believes that those particular monies are still within Defendant's possession." Opp. at 7 (citing Am. Compl. ¶¶ 15-17, 24-26).

That argument misconstrues the law. "Weekly payments" is not an identifiable fund for purposes of equitable relief. Akers v. Md. State Educ. Ass'n, 990 F.3d 375, 381-382 (4th Cir. 2021) ("Because the plaintiffs here are unable to point to any identifiable fund in the union defendants' possession, we follow the reasoning of the Sixth and Seventh Circuits and conclude that, in substance, the plaintiffs' claim for relief is a claim for damages."). Moreover, money deposited into Ms. Napky's bank account immediately becomes her (or the bank's) property – it is not an identifiable property of Plaintiff. See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Rodriguez, No. 18-cv-7226, 2021 U.S. Dist. LEXIS 7052, at *14-15 (N.D. Ill. Jan. 14, 2021) ("plaintiffs' theory assumes the money, once deposited into the Account, remains plan assets. Plaintiffs have not shown that assumption is correct as a matter of law. Cf. Hecker v. Deere & Co., 556 F.3d 575, 584 (7th Cir. 2009) (once assets were 'transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans.'); People ex rel. Russell v. Farmers' State & Sav. Bank of Grant Park, 338 Ill. 134, 137, 170 N.E. 236 (Ill. 1930) ('As a rule,

9

when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes of the creditor of the bank.'")).

In short, as explained, Plaintiff simply alleges that it paid Defendant certain unearned payments into her bank account – part of her general assets. As such, Defendant does not (and cannot) identify a specific property in possession of Defendant to which it is entitled. Montanile, 577 U.S. at 145; Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC, Civil Action No. DKC 14-2376, 2015 U.S. Dist. LEXIS 91689, at *25-26 (D. Md. July 15, 2015) ("the only allegation supporting that the Cigna entities can specifically identify and trace plan funds is that the 'overpayments [at issue] are within the possession and control of the Defendants.' [citation omitted]. The Cigna entities have not alleged that the overpayments were kept in separate accounts or otherwise how they are separate and distinct from the ASCs' general assets.") (citing Cent. States, Se. & Sw. Areas Health & Welfare Fund, 756 F.3d at 366)).

Accordingly, Plaintiff's claim is one for general damages, not in equity, and Plaintiff's claim fails for that separate reason.[4]

---

[4] The Second Circuit's decision in Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co., 771 F.3d 150 (2d Cir. 2014) outlines the Supreme Court precedent well. The Second Circuit held that that the Supreme Court's decisions have "permitted the terms of the plan to override certain rules of equity, including the strict tracing requirements normally applicable to equitable restitution. Both courts did so, however, only because the plan terms constituted a contract between the parties involved in the lawsuit. All three cases involved disputes between the plan and one of its beneficiaries. None involved the assertion of claims against a third-party . . . ." Id. at 156. "Absent such an agreement, Central States is, in effect, seeking compensation from Gerber's general assets in the amount of the Common Insureds' claims, not a right to title or possession of particular funds or property held by Gerber that were received from, or promised to Central States. As Great-West and its progeny teach, such relief is legal relief that is not available under § 502(a)(3)." Id. at 157-58 (citing Great-West, 534 U.S. at 213-14).

10

### III. To the Extent Plaintiff Pleads Federal and State Common Law Claims for Unjust Enrichment, They Must Also be Dismissed

Plaintiff, assuming that it has alleged a valid claim under ERISA, only argues that because it has a valid ERISA claim, it can pursue a federal common law claim for unjust enrichment and the Court can therefore retain jurisdiction over any state law claims. As such, Defendant stands on her prior argument as set forth in her Moving Brief. Def.'s Moving Brief at 16-19; see also Provident Life & Accident Ins. Co. v. Cohen, 423 F.3d 413, 426 (4th Cir. 2005) ("we cannot ignore ERISA's proscription of the type of relief sought by Provident and permit a federal common law remedy for unjust enrichment. That is, we cannot afford Provident the right to do that which it cannot do under ERISA. It is simply not within the court's purview to decide the proper balance of rights and remedies under ERISA.").

### IV. CONCLUSION

As explained above, the alleged payments at issue have nothing to do with (i) ERISA or benefits (regardless of whether they are wages or not); (ii) Ms. Napky, the Defendant, violating ERISA or any plan provision; or (iii) the enforcement of an ERISA or plan provision entitling the Fund to recoupment of the alleged payments made in error. In short, this is an action where the Fund is operating as a commercial entity – nothing more. As such, given that Plaintiff has now had a chance to amend its complaint, Defendant respectfully requests that Plaintiff's Amended Complaint be dismissed for failure to state a claim and that any remaining state law claims be dismissed for lack of supplemental jurisdiction.

Respectfully Submitted,

*/s/ Mark J. Passero*
Mark J. Passero (VSB No. 90463)
D. Scott Laws (VSB No. 99436)
LawrenceQueen

>701 East Franklin Street, Suite 700
>Richmond, Virginia 23219
>Telephone: (804) 643-9343
>Facsimile: (804) 643-9368
>*mpassero@lawrencequeen.com*
>*slaws@lawrencequeen.com*
>
>*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on this 20th day of June 2024, the foregoing document was served via the Court's ECF system upon all counsel of record, including the following:

Jacob N. Szewczyk, Esq. (VSB No. 89617)
Charles W. Gilligan, Esq. (admitted pro hac vice)
Sumbul I. Alam, Esq. (pro hac vice forthcoming)
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC 20015
Telephone (202) 362-0041
Facsimile (202) 362-2640
*jszewczyk@odonoghuelaw.com*
*cgilligan@odonoghuelaw.com*
*salam@odonoghuelaw.com*

*Counsel for Plaintiff*

/s/ Mark J. Passero
Mark J. Passero (VSB No. 90463)
D. Scott Laws (VSB No. 99436)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*mpassero@lawrencequeen.com*
*slaws@lawrencequeen.com*

*Counsel for Defendant*