IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TRUSTEES OF THE PLUMBERS )
AND STEAMFITTERS UNION LOCAL )
No. 10 APPRENTICESHIP FUND, )
                                             )
                Plaintiff, )
                                             )
v.                                           )   Civil Action No. 3:24-CV-180–HEH
                                             )
VICTORIA NAPKY, )
                                             )
               Defendant. )

**MEMORANDUM OPINION**
**(Granting Defendant's Motion to Dismiss)**

THIS MATTER is before the Court on Defendant Victoria Napky's ("Defendant") Motion to Dismiss (the "Motion," ECF No. 14), filed on May 31, 2024. Plaintiff Trustees of the Plumbers and Steamfitters Union Local No. 10 Apprenticeship Fund ("Plaintiff" or the "Fund") filed its Complaint (ECF No. 1) on March 11, 2024, and its Amended Complaint (ECF No. 13), on May 17, 2024, alleging violations of ERISA, and seeking equitable relief under federal and state common law unjust enrichment. (Am. Compl. ¶¶ 20–32.) Defendant now moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. at 1.) The parties have filed memoranda supporting their respective positions, and the Court heard oral argument on September 26, 2024. At the hearing, the Court granted Defendant's Motion for the reasons articulated below. (Minute Entry at 1, ECF No. 23.)

## I. BACKGROUND

Plaintiff is the "named fiduciary" within the meaning of ERISA, 29 U.S.C. §1102(a), for the Plumbers and Steamfitters Union Local No. 10 Apprenticeship Fund. (Am. Compl. ¶ 1, ECF No. 13.) The Fund is governed by its Restated Agreement and Declaration of Trust (the "Trust Agreement"). (*Id.*) Defendant Napky was a journeyperson member of Local 10 and has worked for several employers that are members of the Apprenticeship Fund and subject to the Trust Agreement. (*Id.* ¶ 9.) Both parties are Virginia citizens. (*Id.* ¶¶ 1, 2.)

The Amended Complaint discusses several positions Defendant held with Local Union No. 10 and the Fund, but the only employment relevant to Plaintiff's allegations is when Defendant was hired to "assist the Fund's Training Director in the office" on June 22, 2022. (*Id.* ¶ 12.) "As a contractual employee, [Defendant] was paid an hourly wage . . . with no fringe benefits." (*Id.*) Defendant's "wage package did not include the pension, medical and other fringe benefit contributions paid on behalf of employees working under the Local 10 [Collective Bargaining Agreement]." (*Id.* ¶ 7.) On August 5, 2022, Defendant left Plaintiff's employment for another union position. (*Id.* ¶ 13.) According to Plaintiff, "[d]ue to an internal communication error, [Defendant's] weekly payments from the Fund continued to be directly deposited into her account after she terminated her employment." (*Id.* ¶ 14.) Defendant continued to receive the payments in error until February 29, 2023. (*Id.* ¶ 17.) Defendant allegedly received a total of $58,590 in erroneous payments. (*Id.* ¶ 24.)

2

Based on this sequence of events, Plaintiff brings two (2) counts against Defendant: Count I—Equitable Relief under ERISA and Count II—Federal and State Common Law Unjust Enrichment. (*Id.* ¶¶ 20–32.)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387) (alteration in original). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).

A court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded factual allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v.*

3

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

Defendant moves to dismiss Plaintiff's ERISA claim for failure to state a claim and then subsequently dismiss the remaining state law claims for lack of subject matter jurisdiction. (Mot. at 1.) The crux of Defendant's argument is twofold. First, while Plaintiff is a "named fiduciary" in the context of ERISA, when it operates as a commercial entity (i.e., when paying its employees a normal salary), it is governed by state law, not ERISA. (Def.'s Mem. in Supp. at 2, ECF No. 15.) Second, while ERISA permits equitable relief, this relief does not include monetary relief, i.e., an unjust enrichment theory.

Conversely, Plaintiff contends that the payments to Defendant are not wages, but other money from the Fund. (Pl.'s Resp. in Opp'n at 3, ECF No. 16.) Because the Trust Agreement does not allow for payments after the termination of employment, Plaintiff argues that it can enforce the action under ERISA. (*Id.* at 5.) Finally, Plaintiff contends that monetary relief under unjust enrichment is available. (*Id.* at 6.)

#### A. Count One—Equitable Relief under ERISA

ERISA permits a fiduciary "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). Defendant argues that on the plain language of ERISA, Plaintiff can only sue to redress violations or enforce provisions of the plan, i.e. the Trust Agreement. (Def.'s Mem. in Supp. at 7–8.) Here, Plaintiff does not seek to

4

enforce any provision of the plan but to reverse erroneous payment of wages. (*Id.*) Moreover, ERISA "regulates certain *relationships*" including "between employer and employee (to the extent an employee benefit plan is involved)." (*Id.* at 8 (citing *Gen. Am. Life. Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993)). Accordingly, Defendant argues that the relationship here was between an employer and employee—not involving any benefit plan. (*Id.* at 8.) Indeed, the Complaint explicitly notes that Defendant was "paid an hourly wage . . . with no fringe benefits." (Am. Compl. ¶ 12.) When an ERISA fiduciary operates just like any other commercial entity, as alleged here, Defendant contends that "ERISA doesn't purport to regulate those relationships." (Def.'s Mem. in Supp. at 8 (citing *Castonguay*, 984 F.2d at 1522).)

Plaintiff argues that Defendant's characterization of the payments as wages is untenable. (Pl.'s Resp. in Opp'n at 3.) According to Black's Law Dictionary, "wages" are "compensation of an employee based on time worked or output of production." (*Id.* (citing Black's Law Dictionary, Wage (11th ed. 2019).) Thus, because Defendant had ceased her employment with Plaintiff, the payment cannot possibly be "based on time worked or output of production." (*Id.*) Furthermore, Plaintiff argues that the Complaint sufficiently alleges that Defendant violated the provisions of the ERISA plan. (*Id.* at 4–5). The Fund's Trust Agreement permits the use of money to provide "training, and educational programs and paying reasonable and necessary expenses for the operation and administration of the Fund." (*Id.* at 5 (citing Am. Compl. ¶ 22.) Because the Trust Agreement does not permit erroneous payments to former employees, Defendant's

5

"receipt of plan assets after terminating her employment with the Fund violates the terms of a governing plan document." (*Id.* at 5).

While Plaintiff's payments to Defendant are likely contrary to the terms of the Trust Agreement, the relationship between Plaintiff and Defendant is insufficient to permit an action under ERISA. The Fourth Circuit has noted that

> the same entity may function as an ERISA in some contexts but not in others. Accordingly, a plan sponsor is entitled to wear different hats: it may perform some functions as a fiduciary to the plan, while it may perform other functions on its own behalf, i.e., in a non-fiduciary capacity. A plan sponsor, however, only possesses standing to pursue actions under § 502(a) that are "related to the fiduciary responsibilities it possesses" . . . . Where, however, a plan sponsor's claims in a lawsuit relate solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants and beneficiaries, it is not acting as an ERISA fiduciary under 29 U.S.C. § 1002(21)(A).

*Sonoco Prod. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 373 (4th Cir. 2003) (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996).) Other Circuits have settled the issue in a similar manner. *See Castonguay*, 984 F.2d at 1522 ("ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity."); *Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir. 1999) ("They may conduct business and acquire the same rights of action under state law as other entities not created by ERISA. When an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law."). Accordingly, while Plaintiff is undoubtedly a "named fiduciary" under ERISA, that alone is not enough to give rise to a viable claim under ERISA.

Plaintiff provides training and educational programs. (Pl.'s Resp. in Opp'n at 5.) In this facet, Plaintiff hired Defendant as an instructor. (Am. Compl. ¶ 7.) As an instructor, Defendant was paid hourly, with no fringe benefits of any kind. (*Id.* ¶ 12.) Unlike other union positions, Plaintiff was not making contributions to a defined benefit pension plan or defined contribution pension plan. (*Id.* ¶ 8.) Plaintiff does not identify how Plaintiff and Defendant's relationship implicated ERISA other than the fact that Plaintiff generally operates as a "named fiduciary" and Defendant was allegedly paid with Fund assets.[1] While Plaintiff is subject to the Trust Agreement, and must use money according to that governing document, Plaintiff offers no support to claim that the Trust Agreement can affect its relationship with Defendant, when Defendant is not a party to the Trust Agreement. Likewise, if the Court were to accept Plaintiff's position that use of Fund assets, regardless of *how* they are used, entitles a named fiduciary to litigate state law claims through ERISA, the implications would be very consequential.[2] The Court cannot entertain Plaintiff's theory that risks turning countless disputes into federal claims simply because they involve an ERISA fund. Therefore, Count I will be dismissed

---

[1] The parties dispute how to characterize Plaintiff's payments to Defendant. However, whether they constitute (erroneous) wages or not, is immaterial. The important fact is that they were not erroneous pension payouts, or another erroneous retirement benefit payment.

[2] A few examples illustrate just how consequential this could be. Suppose the Fund purchased a plot of land with Fund assets to build a new training center. After signing the contract, but before closing, the seller backs out. Under Plaintiff's theory, the Fund's breach of contract claim seeking specific performance could also be a claim for equitable relief under ERISA. Another example, suppose facts akin to this case. A Fund reimburses an instructor for gas expenses from Fund-approved travel. The Fund overpays the instructor by $5. Under Plaintiff's theory, Congress intended to grant exclusive federal jurisdiction—with attorney's fees—to the Fund to litigate a $5 loss.

without prejudice because the claims at issue do not implicate ERISA. The Court need not address Defendant's remaining arguments for dismissal.

### B. Count Two—Federal and State Common Law Unjust Enrichment

A claim for unjust enrichment may be made under ERISA. *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 502 (4th Cir. 2023); *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 992 (4th Cir. 1990); *Neal v. General Motors Corp.*, 266 F. Supp. 2d 449, 456 (W.D.N.C. 2003) ("[T]he statutory policies supporting ERISA favor finding that Defendant's federal common law unjust enrichment claim arises under ERISA."). Yet as previously discussed, the issues in this case do not implicate ERISA. *See Neal*, 266 F. Supp. 2d at 456 ("[A]n unjust enrichment action [may be] an appropriate remedy in circumstances regarding incorrect payment *under an employee benefit plan*." (emphasis added)). Outside of the ERISA context, Plaintiff fails to identify any authority granting a general federal common law unjust enrichment cause of action. As such, Plaintiff fails to state a claim for Count Two under federal law. Moreover, Plaintiff's sole argument for maintaining its state common law claim is the Court exercising supplemental jurisdiction through its ERISA claim. (Pl.'s Mem. in Opp'n at 7.) Because the Court will dismiss all of Plaintiff's federal claims, the Court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Waybright v. Frederick Cnty.*, 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions gone, there may be the authority to keep it in federal court under 28 U.S.C. §§ 1367(a) and 1441(c), but there is no good reason to do so.") Finding no good reason to maintain the case, the Court declines further jurisdiction,

8

and accordingly has no occasion to address the merits of Plaintiff's state law claim.

Count II will be dismissed for Plaintiff to reraise his claim in state court.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 14) will be granted.

Counts I and II will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Oct. 8, 2024
Richmond, Virginia

9